## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2022 CA 0564

JARED BENOIT

VERSUS

JASON BOURGEOIS, ROLAND LEBLANC D/B/A LEBLANC TREE SERVICE, ABC INSURANCE COMPANY AND DEF INSURANCE COMPANY

*DATE OF JUDGMENT:* **MAR 0 3 2023**

ON APPEAL FROM THE SEVENTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFOURCHE, STATE OF LOUISIANA
NUMBER 138089, DIVISION B

HONORABLE STEVEN M. MILLER, JUDGE

\* \* \* \* \* \*

Shelley Hammond Provosty
Peirce A. Hammond, II
J. Roumain Peters III
New Orleans, Louisiana

Counsel for Plaintiff-Appellant
Jared Benoit

Jason P. Foote
Devin Caboni-Quinn
Kaleigh K. Rooney
Metairie, Louisiana

Counsel for Defendant-Appellee
Jason Bourgeois

Roland LeBlanc
Thibodaux, Louisiana

Pro Se for Defendant-Appellee
Roland LeBlanc d/b/a LeBlanc Tree
Service

\* \* \* \* \* \*

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

Disposition: AFFIRMED.

**CHUTZ, J.**

Plaintiff-appellant, Jared Benoit, appeals the trial court's summary judgment dismissal of his claims against defendant-appellee, Jason Bourgeois, the homeowner who owned the tree that Benoit identified as the tree he fell from while working for Roland LeBlanc d/b/a LeBlanc Tree Service.[1] For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 2, 2019, Benoit filed a petition for damages, naming Bourgeois as a defendant and averring that on April 28, 2018, when climbing a tree for a tree-trimming job on property owned by Bourgeois, Benoit fell from the tree. Benoit noted that at the time he fell from the tree, he was working part-time for LeBlanc's tree service.[2] Benoit alleged that pursuant to a verbal contract between LeBlanc's tree service and Bourgeois, on April 28, 2018, he climbed a tree and trimmed it without incident. When he climbed the next tree that LeBlanc's tree service agreed to trim, he fell "due to a rotten branch of the tree that broke as he was holding onto it." Benoit claimed the tree from which he fell was "diseased and rotten and presented an unreasonably [dangerous] condition" that Bourgeois knew or should have known about and either remedied or warned him of. Thus, according to Benoit's petition, Bourgeois was liable to Benoit for damages for the injuries he sustained.

Bourgeois answered the petition, generally denying Benoit's claims, and asserted various defenses. Thereafter, Bourgeois filed a motion for summary

---

[1] In his petition for damages, Benoit named "Roland LeBlanc d/b/a LeBlanc Tree Service" as a defendant. The record does not contain any pleading by Roland LeBlanc d/b/a LeBlanc Tree Service who, in this appeal, appears in a pro se capacity. To avoid confusion, we refer to the individual Roland LeBlanc as "Roland" and Roland LeBlanc d/b/a as LeBlanc Tree Service as "LeBlanc's tree service," although we note that in his deposition testimony, Roland identified the business he operated as "LeBlanc's Lawn and Tree Service."

[2] It is undisputed that at the time of the incident, LeBlanc's tree service carried no workers' compensation insurance.

2

judgment urging entitlement to dismissal from the lawsuit. After a hearing, the trial court agreed and, on March 11, 2022, signed a judgment granting the motion for summary judgment and dismissing Bourgeois from the lawsuit. Benoit appealed.

## DISCUSSION

A ruling on a motion for summary judgment is reviewed under a de novo standard, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Jones v. Whips Elec., LLC*, 2022-01035 (La. 11/22/22), 350 So.3d 846, 848.

The burden on the party moving for summary judgment does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1); *Jones*, 350 So.3d at 849. When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise, must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B); *Jones*, 350 So.3d at 849. Once a motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. *Id.*

The liability of the homeowner defendant is governed by La. C.C. art. 2317.1, which provides, in pertinent part, "[t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin,

3

vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." An essential element to a claim under Article 2317.1 is proof that the owner or custodian had actual or constructive knowledge of the defect, meaning the party either knew of the defect or, in the exercise of reasonable care, should have known of the defect. *Jones*, 350 So.3d at 850.

On appeal, Benoit contends the record contains ample evidence that Bourgeois should have known the branch that broke as Benoit held onto it was rotten at the time LeBlanc's tree service was trimming the trees on Bourgeois's property. As such, Benoit urges the trial court erred in granting summary judgment.

In support of his motion, Bourgeois submitted his deposition testimony along with that of Roland and Benoit. According to the collective testimony, the following facts were established. On or around April 28, 2018, close to noon, Benoit accompanied Roland and Roland's brother-in-law, Dustin LeBlanc, to the premises owned by Bourgeois, Roland's wife's uncle, to trim several trees.[3] Having worked with Roland and other tree services, Benoit had tree-trimming experience. Roland and Benoit had known each other since they were teenagers, and Roland had taught Benoit how to climb trees for tree service purposes. Before the April 2018 job, Roland met with Bourgeois on the property. LeBlanc's tree service had undertaken tree services for Bourgeois on his property on two prior occasions. According to Bourgeois, for $600.00, LeBlanc's tree service agreed to cut branches from two water oaks on his property.[4] Bourgeois stated that he wanted

---

[3] Although Benoit and Bourgeois recalled the accident date as April 28, 2018, LeBlanc believed it was on April 27, 2018.

[4] The deponents described the trimming project as "lifting" the trees, which was the removal of the lower branches.

4

the trees trimmed because the branches were growing close to the shop he had in the back of his house, and he was concerned they may fall on the house during a storm. Another concern he had was that the branches were in the way when grass cutting. Roland testified that Bourgeois wanted the trees trimmed because the lower branches rubbed the shop in the back of the house and there were a few rotten branches for which Bourgeois wanted the dead wood taken out to "make them look pretty." Approximately two or three weekends later, LeBlanc's tree service business returned to do the job.

Although the deponents' recollections varied as to which tree Benoit was in, what his assignment was, and where Roland and Dustin were physically located when Benoit fell, it is undisputed that the branch that gave way was rotten. Benoit landed on his back and was taken by ambulance to a hospital where he received medical care for five shattered vertebrae in his lower back.

Importantly for purposes of this summary judgment, Roland testified that Bourgeois did not instruct LeBlanc's tree service on how to execute the tree-trimming project. Bourgeois, according to Roland, was interested only in the end result and did not offer any thoughts or direction on how to accomplish the job. Roland was unaware of any expertise that Bourgeois had in trees and stated that there was nothing about the tree from which Benoit fell that Roland believed would have led Bourgeois to know of any rot or disease in it. In Roland's opinion, Bourgeois did nothing to cause the accident and could not have done anything to prevent it.

Bourgeois testified that he lived on the property where the incident occurred for 48 years, with the last 26 years on a subdivided portion with a separate address. He was unaware of any problems with the two trees he wanted LeBlanc's tree service to trim, and specifically did not know of any rotting branches or disease in

5

the tree that Benoit identified as the one from which he fell. Bourgeois stated that he did not direct LeBlanc's tree service, or any of its workers trimming the trees that day, on how to do the job. According to Bourgeois, he was not a tree expert, which was why he hired LeBlanc's tree service, and he relied on the tree service to determine the manner necessary to perform the trimming work safely and competently. Bourgeois explained that he did not direct LeBlanc's tree service to use a worker to climb the tree rather than to rent a man lift; the decision to have a worker climb the tree was made by LeBlanc's tree service.

Bourgeois and Benoit agreed that they did not know each other prior to the day of the incident. They introduced themselves to one another, and Benoit went about his work duties. Benoit acknowledged that although Bourgeois was present as LeBlanc's tree service undertook the project, Benoit did not receive any direction from Bourgeois on how to accomplish the trimming. Additionally, Benoit testified that Roland never advised Benoit that Bourgeois had any specific instructions for him to follow. Although Benoit speculated that Bourgeois had to have a reason to cut the trees and must have inspected them, he admitted he was not saying that Bourgeois knew the tree had the rotten branch that broke.

Benoit stated that from the ground there was nothing visible that he could see that indicated the tree had a rotten branch, and there was nothing visible from the ground that should have alerted Bourgeois of a rotten branch in the tree. Specifically, he saw no mold growing or other indications of rot. Insofar as the claim that Bourgeois failed to maintain the tree from which he fell, Benoit conceded that he did not know how Bourgeois would have known there was a rotten branch. In light of Benoit's past experience, he suggested that Bourgeois could have hired someone to maintain the tree, adding, "I guess like what [Bourgeois] did, hire [LeBlanc's tree service]."

Benoit explained that in the past, when there was a noticeable problem with a tree, LeBlanc's tree service discussed it with him before he climbed the tree. Ultimately, Benoit conceded he had no information that Bourgeois knowingly allowed Benoit to place his weight on a branch Bourgeois thought was rotten.

With this showing, Bourgeois pointed out an absence of factual support for the knowledge or constructive knowledge element of Benoit's custodial liability claim. Thus, the burden shifted to Benoit to produce evidence of a material factual dispute. In response, Benoit offered no additional items, relying instead on excerpts from the same three depositions and arguing that in light of his long relationship with the property, Bourgeois must have known there was a rotten branch in the tree that Benoit identified as the one from which he fell.

We find this showing insufficient to create a material issue of fact. Benoit, an experienced tree service worker, testified that there was nothing visible from the ground to indicate a rotten branch was present in the tree from which he fell. And Roland, the owner and operator of LeBlanc's tree service, stated that nothing about the tree that Benoit identified as having fallen out of would have alerted Bourgeois to rot or disease in it. And Roland was unable to point to anything that Bourgeois did to cause the accident or could have done to prevent it. Given that experienced tree service workers did not discover the rotten branch before undertaking the project, the record lacks factual support for the theory that Bourgeois, who lacked any expertise in tree service, should have found the branch in the exercise of ordinary care. Accordingly, because Benoit failed to establish a material issue of fact, the trial court correctly granted summary judgment and dismissed Bourgeois

7

from Benoit's lawsuit.[5]

## DECREE

For these reasons, the trial court's summary judgment dismissal of defendant-appellee, Jason Bourgeois, is affirmed. Appeal costs are assessed against plaintiff-appellant, Jared Benoit.

**AFFIRMED.**

---

[5] Benoit complains that the trial court erred in applying "the repairman case law" to support the dismissal of his claims against Bourgeois. Prior to 1996, the liability of an owner or a custodian of a thing with a vice or defect was rooted in La. C.C. art. 2317, which imposed strict liability based upon status rather than on personal fault. See *Millien v. Jackson*, 09-56 (La. App. 5th Cir. 12/29/09), 30 So.3d 167, 173 (citing *Celestine v. Union Oil Co. of California*, 94-1868 (La. 4/10/95), 652 So.2d 1299, 1303, as an example). Even before the 1996 amendment to Article 2317, the Louisiana Supreme Court recognized "there is no per se exception of repairmen from the ambit of an owner's strict liability. Such exception only applies if a factual analysis results in a determination that the risk of injury or harm is unreasonable under the circumstances." *Celestine*, 652 So.2d at 1304-05. Thus, the *Celestine* court held that it was not adopting a repairman exception to strict liability under Article 2317 but concluded instead that "plaintiff's status as a repairman is a significant factor in [the] determination of whether a risk is unreasonable." *Celestine*, 652 So.2d at 1305. In its oral reasons supporting its dismissal of Benoit's claims, the trial court referenced the repairman case law but actually concluded "There was no evidence to show that ... Bourgeois knew or should have known that this branch that gave way was, in fact, defective, and that he, in [any way] concealed it from the [Benoit]." Because Bourgeois pointed out an absence of factual support for the essential element of his actual or constructive knowledge of the alleged defect, the trial court's conclusion is correct. Thus, the significance of Benoit's status as a tree service worker in a determination of whether the presence of a rotten branch in a tree that Bourgeois hired LeBlanc's tree service to trim constituted a defect which presented an unreasonable risk of harm is immaterial, and we pretermit any discussion of the issue.